**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**PETER CORINES,**

                                      **Petitioner,**

                                                                              **REPORT and**
                      **-against-**                                            **RECOMMENDATION**
                                                                              **05-CV-2056 (NGG)**

**WARDEN, Otisville Federal Correctional Inst.,**

                                      **Respondent.**
-------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## INTRODUCTION

Petitioner Peter Corines was convicted following a jury trial of four counts of

Unauthorized Practice of Medicine in violation of New York Education Law § 6512(1).

Resp. 1.[1]  The conviction arose from petitioner's employment of Ana Marie Santi, an

anesthesiologist whose license had been suspended, and was based on the allegation that

petitioner aided and abetted Santi's unlicensed practice of medicine.  Petitioner's conviction was

affirmed first by the Appellate Division, Second Department, and then by the New York Court of

Appeals.  *People v. Corines*, 308 A.D.2d 457, 764 N.Y.S.2d 117 (2d Dep't 2003), *aff'd*, 3

N.Y.3d 234, 785 N.Y.S.2d 405 (2004).

Corines has filed a habeas corpus petition ("Habeas Pet.") pursuant to 28 U.S.C. § 2254.

Docket Entry 3.   United Stated District Judge Nicholas G. Garaufis has referred the petition to

me for a Report and Recommendation.  Docket Entry 25.  Corines' original petition raises five

claims: 1) that N.Y. Education Law § 6512(1) applies only to persons not authorized to practice

---

[1]"Resp." refers to Respondent's Memorandum of Law in Opposition to Petition for a Writ
of Habeas Corpus, Docket Entry 7.

1

medicine and that therefore the indictment against Corines, at all pertinent times a licensed medical doctor, exceeded the scope of the statute; 2) that there was insufficient evidence to find that petitioner's co-defendant, Ana Marie Santi, engaged in the practice of medicine; 3) that the trial court did not properly respond to a jury question during deliberations; 4) that the jury improperly reached its verdict based upon information that was not presented at trial but was provided during deliberations by a juror employed as a nurse, and that a subsequent hearing with respect to this issue conducted by the trial judge was inadequate; and 5) that petitioner was denied the effective assistance of counsel at trial.

Corines subsequently filed an amended petition ("Am. Habeas Pet."), docket entry 12, raising six additional claims. Although Corines subsequently withdrew most of these additional claims, two remain pending: 1) that the trial judge failed to instruct the jury properly with respect to both the government's burden of proof and N.Y. Education Law § 6512(1); and 2) that the trial judge was biased against petitioner and knew the indictment was flawed. Reply 7-9.[2]

Petitioner twice sought stays of his petition in order to return to state court. During a conference held on June 5, 2006, I denied petitioner's first stay application. Docket Entry 30 at 13-16; Reply 5. On August 7, 2006, petitioner filed a motion to stay in order to exhaust state remedies for three of his claims. Docket Entry 32. By Order dated January 29, 2007, I denied petitioner's application, finding that petitioner's unexhausted claims were plainly meritless. Docket Entry 42.

Additionally, petitioner has made numerous applications for discovery. At the conference held on June 5, 2006, I granted in part and denied in part petitioner's application for additional

---

[2]"Reply" refers to the Reply Brief of Petitioner, Docket Entry 24.

documents. Petitioner has also made repeated requests for copies of the exhibits introduced at his trial, which I have denied. *See* Docket Entries 33-34.[3]

On September 27, 2006, petitioner filed a motion for summary judgment. Docket Entry 38. In his motion, petitioner seeks judgment as a matter of law on grounds one (petitioner's claim that a physician authorized to practice medicine may not be prosecuted under New York Education Law § 6512(1)) and six (petitioner's claim that the trial judge improperly instructed the jury that Section 6512(1) could apply to a person who aids or abets another to practice medicine without a license) of his habeas petition. *Id*. at 1-2.

A district court may hear a motion for summary judgment on a habeas petition. *See Whitaker v. Meachum*, 123 F.3d 714, 715 n.2 (2d Cir. 1997); *see also* Habeas Rules Governing § 2254 Cases, Rule 11, 28 U.S.C. foll. § 2254 (applying the Federal Rules of Civil Procedure to habeas petitions). Generally, however, a summary judgment motion is appropriately brought in a habeas case only where the motion would avoid the need for a full review of the trial record, such as when there is a question of jurisdiction. *See Mitchell v. Goord*, 2005 WL 701096, at *4 (N.D.N.Y. Mar. 21, 2005). Moreover, on a summary judgment motion, a court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party or, in this case, against Corines. *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991); *see also Sulaiman v. U.S.*, 2002 WL 519718, at *2 (E.D.N.Y. Apr. 2, 2002) (applying

---

[3]By Letter dated August 25, 2006, petitioner renewed his request for production of the trial exhibits on the ground that he "believes that further ground for habeas relief may exist." Pet. Letter dated Aug. 25, 2006, at 2. It appears the letter was not entered on the court's electronic case file docket. The transcript from petitioner's trial describes the exhibits in sufficient detail for purposes of the pending petition, and the record does not reflect any basis for petitioner's assertion that their admission "allowed the Jury to be prejudiced by matters that were not part of the Indictment on trial." *Id*. at 2.

general summary judgment principles to a summary judgment motion brought in the context of a habeas corpus petitioner filed pursuant to 28 U.S.C. § 2255). In any event, for the reasons discussed below, I conclude that Corines' petition lacks merit, and I recommend that his motion for summary judgment be denied and his petition for habeas corpus be dismissed.

## LEGAL STANDARDS

Corines' habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Before turning to the substantive claims raised in his habeas petition, I address the following threshold issues: a) custody, b) mootness, c) statute of limitations, d) exhaustion, and e) the AEDPA standard.

### A. <u>Custody</u>

Section 2254 requires that a habeas petitioner be "in custody" at the time his petition is filed. 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States.") (emphasis added). Moreover, the petitioner must be "in custody" pursuant to the conviction challenged in his habeas petition. *Maleng v. Cook*, 490 U.S. 488, 490-92, 109 S. Ct. 1923, 1925-26 (1989).

Corines' petition raises a threshold question of whether he meets the "in custody" requirement for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 because his challenge to his state-court conviction came before this court while he was serving time in federal custody on other charges. Whether a petitioner meets the "in custody" requirement is determined by his status on the date his petition is filed. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S. Ct. 1556,

1560 (1968). Pursuant to the "mailbox rule," a *pro se* prisoner's habeas petition is deemed filed as of the date he delivered it to prison authorities for mailing. *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir.), *cert denied* 534 U.S. 886 (2001) (applying the Supreme Court's "mailbox rule," as articulated in *Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385 (1988), to *pro se* habeas petitions filed by prisoners). Moreover, the presumption is that the date a petitioner signed his petition is the date he gave it to the authorities. *Whaley v. Graham*, 2007 WL 708796, at *2 n.1 (E.D.N.Y. Mar. 6, 2007). Corines' petition is dated February 5, 2005 and is thus deemed filed as of that date.[4]

On February 5, 2005, Corines was incarcerated at the Otisville Federal Correctional Institute pursuant to federal convictions for conspiracy and mail fraud. *U.S. v. Corines*, 02-CR-021 (S.D.N.Y.); Resp. 1, n.1. Nevertheless, if Corines was still on probation pursuant to his state court sentence on February 5, 2005, he would meet the "in custody" requirement. *Jones v. Cunningham*, 371 U.S. 236, 240-43, 83 S. Ct. 373, 376-77 (1963) (holding that parole meets the custody requirements for habeas petitions); *Olson v. Hart*, 965 F.2d 940, 942-43 (10th Cir. 1992) ("Probationary status is sufficiently 'in custody' pursuant to section 2254 to permit habeas relief."); *Gilfus v. Vargason*, 2008 WL 65579, at *3 n.7 (N.D.N.Y. Jan. 3, 2008) (finding that petitioner met the "in custody" requirement because he was on probation at the time the petition was filed).

Because petitioner's state-court custody status was unclear, I requested additional

---

[4]The petition was received by the *pro se* office in the Southern District of New York on March 2, 2005, and transferred to this district on April 6, 2005. Docket Entry 3. It was received by the Clerk of the Court for this district on April 28, 2005. The error in addressing his petition to the Southern District, however, does not affect the date of his filing. *See, e.g.*, *Houston*, 487 U.S. at 268, 108 S. Ct. at 2381; *Whaley*, 2007 WL 708796, at *2 n.1.

information and supporting documentation. Both parties provided documentation establishing

that, on January 12, 2005, petitioner's state court probation was revoked and he was sentenced to

sixty days of incarceration to run concurrently with his federal sentence. Docket Entries 49, 51.

Presumably, Corines was serving that sentence until at least on or about March 12, 2005. Thus,

although Corines was in federal custody when he filed his petition on February 5, 2005, he was

also at that time – and even at the time his petition was received in the Southern District of New

York on March 2, 2005 – concurrently serving a sentence for a violation of the state-court

probationary sentence imposed pursuant to the conviction he attacks in the present habeas

petition.[5] Accordingly, Corines meets the "in custody" requirement of 2254. *See Spencer v.

Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 983 (1998) (finding that petitioner met the "in custody"

requirement of 2254 where he was incarcerated due to a revocation of his parole).

**B. Mootness**

Corines' petition was not received by this court until April 28, 2005. Docket Entry 3. By

that time, Corines, although still in federal custody, had completed serving his state court

sentence. When a habeas petitioner is released from custody while the court is reviewing his

petition, his release does not defeat the jurisdictional "in custody" requirement, *Spencer*, 523

U.S. at 7, 118 S. Ct. at 983, but does raise the question of whether his petition satisfies the

Article III requirement of a live case or controversy.

"A criminal case does not necessarily become moot when the convict finishes serving the

---

[5]Because he was in federal custody at the time, the petition names the Warden of Otisville
as the respondent. It appears that the proper respondent, however, should be the Attorney
General of the State of New York. *See* Habeas Rules Governing § 2254 Cases, Rule 2, 28 U.S.C.
foll. § 2254. I therefore respectfully recommend that the caption be amended to name the proper
respondent as New York State Attorney General Andrew Cuomo.

sentence. Instead, the case will remain a live case or controversy if there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction." *U.S. v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). Although a petitioner seeking to avoid dismissal on grounds of mootness was at one time required to establish that he continued to suffer collateral consequences, the Supreme Court has more recently indulged a presumption of adverse collateral consequences following a criminal conviction. *Spencer*, 523 U.S. at 10, 118 S. Ct. at 984; *Sibron v. New York*, 392 U.S. 40, 55-56, 88 S. Ct. 1889, 1898-99 (1968); *Pollard v. U.S.*, 352 U.S. 354, 358, 77 S. Ct. 481, 484 (1957); *see also Mercurris*, 192 F.3d at 293. Although in *Spencer* the Supreme Court cast a skeptical eye toward *Sibron*'s presumption of collateral consequences, the presumption remains in force. *See Perez v. Greiner,* 296 F.3d 123, 125 n. 4 (2d Cir. 2002); *Brown v. Mazzuca*, 2004 WL 1753314, at *5 (E.D.N.Y. Aug. 5, 2004).

In light of his subsequent federal felony convictions for fraud and conspiracy, it is hard to imagine that Corines actually suffers from any adverse collateral consequences as a result of his state court conviction. Nonetheless, in *Sibron*, the Supreme Court held that "a criminal case is moot only if it is shown that there is *no possibility* that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S. Ct. at 1900 (emphasis added). Indeed, the Court recognized that even the possibility that a prior conviction might be introduced at a subsequent criminal trial to impeach a petitioner's character was sufficient to constitute an adverse consequence of the earlier conviction. *Id*. at 55-56, 88 S. Ct. at 1899. Most relevant to this case, the Court explicitly rejected the notion that a petitioner, simply because his criminal record includes other convictions, would not suffer collateral consequences as a result of the conviction under attack. *Id*. at 56, 88 S. Ct. at 1899. *See also Velez v. New York*, 941 F.

Supp. 300, 308-09 (E.D.N.Y. 1996) (citing *Sibron* and finding that petitioner's attack on his state

court conviction was not moot even though petitioner had three prior violent felony convictions).

Following *Sibron*, I cannot conclude that there is no possibility that Corines will suffer

collateral consequences as a result of his state court conviction. Accordingly, Corines' petition is

not moot simply because he has completed serving his state court sentence.

## C.  Statute of Limitations

Petitioner filed his petition within AEDPA's one-year limitations period. 28 U.S.C.

§ 2244(d)(1). A conviction becomes final when the ninety-day period following final state court

review for filing a petition for a writ of certiorari to the United States Supreme Court has expired.

*McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003). Here, Corines' conviction became final on

January 19, 2005, and his petition was received in the Southern District of New York on March

2, 2005. Thus, Corines' petition was filed well within AEDPA's one-year statute of limitations.

## D.  Exhaustion

Under AEDPA, applicants for habeas relief who are serving state sentences must first

exhaust all state remedies. 28 U.S.C. § 2254(b); *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct.

1347, 1349 (2004). A petitioner has exhausted his state remedies when he has

> (i) presented the federal constitutional claim asserted in the petition
> to the highest state court (after preserving it as required by state
> law in the lower courts) and (ii) informed that court (and lower
> courts) about both the factual and legal bases for the federal claim.

*Ramirez v. Attorney General of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001). In *Baldwin*,

the Supreme Court held that "a state prisoner does not 'fairly present' a claim to a state court if

that court must read beyond a petition or a brief (or a similar document) that does not alert it to

the presence of a federal claim in order to find material . . . that does so." 541 U.S. at 32, 124 S. Ct. at 1351.

In this case, petitioner has exhausted some, but not all, of the claims he raises in his habeas corpus petition. Petitioner has satisfied the exhaustion requirement with respect to his challenges to: 1) the sufficiency of the indictment on the ground that it exceeds the scope of Education Law § 6512(1); 2) the sufficiency of the trial evidence; 3) the trial court's response to the jury's note; and 4) the conduct of the jury in reaching its verdict. Resp. 26-27.

Petitioner's other claims, however – that the trial court did not properly instruct the jury with respect to the prosecution's burden of proof and the elements of the Section of the Education Law at issue, that there was judicial misconduct and bias, and that his trial counsel was ineffective – were not raised in state court. Resp. 27-28; Resp. Supp. 3-5, 9-11.[6] In addition, it appears that petitioner seeks to introduce new grounds for his ineffective assistance of counsel claim in a motion he filed on August 9, 2006, seeking a stay for purposes of exhausting remedies in state court.[7] Docket Entry 32; *see also* Resp. Letter Opp. Pet. Motion for Stay at 1,

---

[6]"Resp. Supp." refers to Respondent's Supplemental Memorandum of Law in Opposition to Amended Petition for a Writ of Habeas Corpus, Docket Entry 15.

[7]Corines' initial petition asserted that his trial counsel was ineffective because he did not consult with or present the testimony of any experts. Habeas Pet. Ground 5. In his motion for a stay, petitioner added two new components to his ineffective assistance claim: 1) that his counsel failed to object to the aspects of trial court's jury charge, and 2) that his trial counsel inadequately examined prospective jurors during voir dire. Pet. Motion to Stay at 4, dated Aug. 7, 2006, Docket Entry 32. I denied petitioner's motion to stay to exhaust these claims. Because a court should "freely give" leave to amend, FED. R. CIV. P. 15(a), particularly when a party is proceeding *pro se*, *Pangburn v. Culbertson*, 200 F.3d 65, 68-71 (2d Cir. 1999), I respectfully recommend that this Court interpret petitioner's motion to stay as a motion for leave to amend and allow the amendment. *See Perez v. Greiner*, 2004 WL 2937795, at *2 n.1 (S.D.N.Y. Dec. 17, 2004); *see also Fama v. Comm'r of Correctional Servs.*, 235 F.3d 804, 815 (2d Cir. 2000). I therefore address the merits of petitioner's additional claims of ineffective assistance of counsel

dated Aug. 29, 2006, Docket Entry 35. These new grounds of ineffective assistance of counsel have not been exhausted; indeed, they have never been raised in any prior state or federal proceedings. *Id*.

Respondent argues that petitioner's unexhausted claims are now procedurally barred. Resp. Supp. 3-5, 9-11. Respondent further contends that this Court should not undertake to review these procedurally defaulted claims because petitioner has not established cause for his procedural default or that a fundamental miscarriage of justice will result if the claims are not reviewed. Resp. Supp. 5-6; *see Coleman v. Thompson*, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 2564-65 (1991).

Where a petition for a writ of habeas corpus is "mixed" – that is, when it contains both exhausted and unexhausted claims, as this one does – a court may a) stay the case while petitioner exhausts his state court remedies, b) allow petitioner to amend the petition to remove the unexhausted claims, or c) deny the petition on the merits. *See* 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 275, 125 S. Ct. 1528, 1534 (2005). A stay, however, is only appropriate where "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and where the petitioner's unexhausted claims are not "plainly meritless." *Rhines*, 544 U.S. at 277, 125 S. Ct. at 1535. Thus, despite the failure to exhaust, a court may deny a mixed petition in its entirety.

For the reasons discussed below, I find that petitioner's unexhausted claims are plainly meritless. It is therefore unnecessary to decide whether there was cause for petitioner's failure to exhaust his claims or whether any of petitioner's claims are procedurally defaulted.

---

below.

## E.  **AEDPA Standard**

Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that was

adjudicated on the merits in state court only if it concludes that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 639-40, 123 S. Ct. 1848, 1852-53

(2003).  The Second Circuit has explained that a state court's decision is "contrary to" clearly

established Federal law "if the state court reaches a result opposite to the one reached by the

Supreme Court on the same question of law or arrives at a result opposite to the one reached by

the Supreme Court on a 'materially indistinguishable' set of facts."  *Earley v. Murray*, 451 F.3d

71, 74 (2d Cir. 2006) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495 (2000)).

An "unreasonable application" of federal law occurs when "the state court identifies the correct

rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way."

*Earley*, 451 F.3d at 74 (*citing Williams*, 529 U.S. at 413).  A federal court reviewing a petition

for a writ of habeas corpus pursuant to this clause must consider "whether the state court's

application of clearly established federal law is objectively unreasonable, where objectively

unreasonable means 'some increment of incorrectness beyond error."  *Id*. (internal citations

omitted).

## FACTS

In 1998 and 1999, Corines, a licensed doctor authorized to practice medicine in New

York State, employed Ana Marie Santi in his Queens medical office. Resp. 2; Trial Tr. 534. Santi was an anesthesiologist whose medical license was suspended indefinitely on or about May 11, 1998. Trial Tr. 433. The prosecution charged that, while employed by Corines and after her license to practice medicine was revoked, Santi administered anesthesia to at least three different patients upon whom Corines then performed surgeries. Trial Tr. 371. Petitioner was indicted and charged with four counts of unauthorized practice of medicine on the theory that he aided and abetted Santi in practicing medicine, knowing that she was not licensed to practice at that time.[8] Trial Tr. 373-75.

The prosecution's case at trial included the testimony of three of Corines' former patients. Trevor Locke testified that he arrived at Dr. Corines' office on July 28, 1998 for a colonoscopy. After arriving and meeting briefly with Corines, Locke saw Santi come into the room and insert an intravenous ("I.V.") needle in his hand. Santi told Locke he would feel a warm sensation when the I.V. started to drip, and he did. Corines then came into the room and asked how Locke was feeling. Trial Tr. 530. When Locke described the warm sensation he felt after Santi started his I.V., Corines told Locke his reaction was expected, and that Corines would "give it some time." Corines then returned five or ten minutes later to perform the colonoscopy. Santi then returned to the room to remove the I.V. needle. Santi told Locke he would feel woozy when he stood up, and he did. Trial Tr. 501-06, 530-31.

Andrea Lopez first saw Dr. Corines for treatment of an eye problem in November of

---

[8]Santi was also indicted on four counts of unauthorized practice of medicine. Although the charges were based on Santi's interactions with only three patients, the four counts reflect the fact that Santi, according to the prosecution, administered anesthesia to one of the patients on two separate occasions.

1998. Lopez was brought to an operating room, where she saw Corines and Santi. Corines was on one side of Lopez and Santi on the other when Santi inserted an I.V. needle into Lopez' hand. According to Lopez, she felt the effects of medication almost immediately and was "out." Even after awakening once the procedure was completed, Lopez continued to feel the effects of the medication. Lopez returned a few weeks later for a second procedure. Again, Santi put a needle in Lopez' arm, and Lopez immediately felt medication entering her body. Lopez recalled as well that Corines instructed Santi to increase the amount of medication, and going "out" shortly thereafter. Trial Tr. 551-59.

Finally, Mary Brosnan testified that she had a procedure performed by Corines in June of 1998. Brosnan, like the others, reported that Santi put a needle in her hand, and that she almost immediately went from feeling very nervous to feeling very relaxed and calm. By the time Corines came into the room, Brosnan was struggling to remain awake. Brosnan also recalled awakening during the procedure and feeling nauseous, and that Santi gave her an injection to relieve her nausea. Trial Tr. 595-97, 606.

Corines presented the testimony of two witnesses and testified on his own behalf. Ligia Castro, who was formerly employed by Corines as a medical assistant, testified that, although she observed Santi starting patients on I.V.'s, she never saw Santi administer medication. Castro further stated that she observed Corines administering medication to Andrea Lopez, and that Corines had the only key to the locked cabinet where the anesthetic and narcotic drugs were kept. Trial Tr. 720-21, 727-28. Dr. Prasad Chalasni, an experienced surgeon, testified that he worked in Corines' office from October of 1998 through April of 1999. Chalasni saw Santi start I.V. lines with glucose saline, but never observed her administering medications to patients. Chalasni

13

further testified that he frequently saw Corines administer anesthesia by injecting drugs into already established I.V. lines.  Trial Tr. 745-49.  Finally, Corines testified that only he administered anesthesia to the patients who testified in the prosecution case.  Trial Tr. 775.

As the summary of the trial testimony set forth above suggests, the factual dispute at trial was a narrow one.  Corines did not dispute that he treated the patients who testified for the prosecution, that he knew Santi had been suspended, or that Santi worked for him and saw those patients as well.  Corines' defense was that Santi was employed by him as a medical assistant and not as a doctor, and that Santi only started I.V. lines with glucose and saline, which she was permitted to do, and did not administer anesthesia or other medications to Corines' patients.  Trial Tr. 388-90, 829.

The jury convicted Corines and Santi on all counts with which they were charged.  Trial Tr. 924-33; Resp. 10.  Petitioner was sentenced to probation and 500 hours of community service.  Resp. 11.

## STATE COURT PROCEDURAL HISTORY

On direct appeal, petitioner contended, among other things, that one or more jurors employed in the medical field improperly influenced the jury's deliberations by sharing their views about which professionals had authority to start I.V. lines.  The Appellate Division remanded for a hearing addressed to petitioner's allegation.  *People v. Corines*, 295 A.D.2d. 445, 743 N.Y.S.2d 314 (2d Dep't 2002).  The trial court then held a hearing at which eleven of the twelve trial jurors testified.  Resp. 12.  After hearing the testimony, the trial court denied petitioner's motion to set aside the verdict based on juror misconduct, and the Appellate Division affirmed.  *People v. Corines*, 308 A.D.2d 457, 764 N.Y.S.2d 117 (2d Dep't 2003) (finding that

14

"defendant failed to establish that one of the jurors conducted a personal specialized assessment not within the common ken of juror experience and knowledge concerning a material issue in the case, and communicated that allegedly expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence"). The Appellate Division also found that the evidence was sufficient to support Corines' conviction, and that Corines' remaining contentions were either unpreserved or without merit. *Id.*

On December 1, 2003, the New York Court of Appeals granted petitioner's application for leave to appeal. *People v. Corines*, 1 N.Y.3d 570, 775 N.Y.S.2d 787 (2003). Petitioner raised the following claims before the Court of Appeals: 1) N.Y. Education Law § 6512(1) does not apply to a licensed professional who aids or abets an individual who is not authorized to practice medicine; 2) the trial court's response to a jury question about whether a medical assistant may administer an I.V. was not meaningful; 3) the evidence was insufficient to convict; and 4) juror misconduct warranted reversal. On October 21, 2004, the New York Court of Appeals affirmed petitioner's conviction. *People v. Santi*, 3 N.Y.3d 234, 785 N.Y.S.2d 405 (2004). Specifically, the Court held that: 1) N.Y. Education Law § 6512 "does not exempt licensed physicians from prosecution," *id.* at 245, 785 N.Y.S.2d at 412; 2) the evidence was legally sufficient, *id.* at 246-47, 785 N.Y.S.2d at 412-14; 3) the trial court's response to the jury note was sufficient, *id.* at 248-49, 785 N.Y.S.2d at 414; and 4) the trial court's finding that there was not juror misconduct, reached after conducting a post-trial hearing, was supported by the record, *id.* at 249, 785 N.Y.S.2d at 415. Corines then filed the instant petition.

**PETITIONER'S CLAIMS FOR HABEAS RELIEF**

**1.  Scope of Education Law § 6512(1)**

Petitioner first claims that the indictment against him was flawed because the statute he

was accused of violating, New York Education Law § 6512(1), applies only to persons who are

not authorized to practice and, at the time of the alleged offenses, petitioner was authorized to

practice medicine.  Habeas Pet. Ground 1.  Section 6512(1) provides that:

> Anyone not authorized to practice under this title who practices or
> offers to practice or holds himself out as being able to practice in
> any profession in which a license is a prerequisite to the practice of
> the acts, or who practices any profession as an exempt person
> during the time when his professional license is suspended,
> revoked or annulled, or who aids or abets an unlicensed person to
> practice a profession, or who fraudulently sells, files, furnishes,
> obtains, or who attempts fraudulently to sell, file, furnish or obtain
> any diploma, license, record or permit purporting to authorize the
> practice of a profession, shall be guilty of a class E felony.

N.Y. EDUC. LAW § 6512(1).  Petitioner's argument, more fully amplified in his state court briefs,

*see* Resp. Exs. A and K, is that the statutory language indicates that a violation may be

committed only by a person "not authorized to practice under this title . . . who aids or abets an

unlicensed person;" in other words, Corines contends that the opening phrase of the statute,

"anyone not authorized to practice under this title" applies to each of the subsequent clauses,

including the aiding and abetting clause.  Thus, petitioner argues, a licensed person does not

violate Section 6512(1) *even if* he aids or abets an unlicensed person to practice.

Petitioner is somewhat bolstered in this interpretation of the statute by the second

subsection of Education Law § 6512, which provides:

> Anyone who knowingly aids or abets three or more unlicensed
> persons to practice a profession or employs or holds such

> unlicensed persons out as being able to practice in any profession
> in which a license is a prerequisite to the practice of the acts, or
> who knowingly aids or abets three or more persons to practice any
> profession as exempt persons during the time when the
> professional licenses of such persons are suspended, revoked or
> annulled, shall be guilty of a class E felony.

N.Y. EDUC. LAW § 6512(2).  The fact that a separate section of the statute also makes it a class E

felony for "anyone" – licensed or not – to knowingly aid or abet *three or more* unlicensed

persons to practice a profession, lends some support to petitioner's argument that aiding or

abetting only *one* unlicensed person is a crime under section 6512(1) only when committed by a

person who is himself not authorized to practice.

Nevertheless, the trial court, the appellate division, and the New York Court of Appeals

all rejected petitioner's interpretation of the statute.  Reviewing petitioner's and his co-

defendant's convictions, the New York Court of Appeals discussed the legislative history leading

to the statute's enactment in some detail.  *People v. Santi*, 3 N.Y.3d at 244-46, 785 N.Y.S.2d

404.  The court noted that the clear regulatory purpose of the statute was "to provide for the safe

interaction of the regulated professions and those individuals that would engage their services,

namely, the public," and that "[a]llowing licensed physicians to aid and abet unauthorized

individuals in the unlawful practice of medicine does not in any way promote the general welfare

or otherwise ensure public safety."  *Id.* at 244.

As the court further observed, the inference Corines seeks to draw from the second

paragraph of Section 6512 – that licensed professionals may be liable only for aiding and abetting

three or more unlicensed persons – is weakened by consideration of the statute's legislative

history.  As originally enacted in 1971, section 6512 consisted only of one section, substantially

similar in wording to the current section 6512(1) but classifying the unauthorized practice of medicine as only a class A misdemeanor.  Five years later, the New York Legislature enacted section 6512(2) "primarily to combat the growing problem of massage parlor prostitution," with "the hope that 'increasing the penalty in cases where three or more persons are involved . . . would facilitate law enforcement efforts to eradicate certain evils such as the illicit practice of massage.'"  3 N.Y.3d at 245 (quoting and citing to legislative history preceding the passage of the new section of the statute).  Three years later still, in 1979, the New York Legislature raised the penalty for a violation of section 6512(1) from a class A misdemeanor to a class E felony.  *Id.* Drawing on this legislative history, the principle of statutory construction that courts "'will not blindly apply the words of a statute to arrive at an unreasonable or absurd result,'" and the fact that petitioner would have been independently liable under New York's accessorial liability statute even if there were no reference to aiding and abetting in Section 6512, the Court of Appeals concluded that licensed practitioners such as Corines are subject to criminal liability under section 6512(1) when they intentionally aid or abet an unlicensed person to practice medicine.  *Id.* at 243-45 (citation omitted).

The highest court of New York has rejected Corines' argument about how the state statute at issue should be construed.  This court's authority to review the construction of a state statute by the New York Court of Appeals is extremely narrow, particularly in an AEDPA case. Because "state courts are the ultimate expositors of state law," *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881 (1975), "[n]either this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."  *Johnson v. Fankell*, 520 U.S. 911, 916, 117 S. Ct. 1800, 1804 (1997).  Thus, "[w]hich

acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). For this reason alone, this aspect of Corines' petition should be denied. Moreover, even if I concluded that the New York Court of Appeals incorrectly construed Section 6512, and I have not, Corines would not necessarily be entitled to habeas relief, because "a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Id*.

Corines has not articulated any basis for challenging the New York Court of Appeals' ruling under the United States Constitution or United States Supreme Court precedent. The only federal claim that is even conceivably applicable to Corines' argument about Section 6512 is that the New York Court of Appeals' interpretation of the statute was so novel that it denied Corines "fair warning" that his conduct was criminal. Were that so, Corines' conviction would violate the Due Process Clause, because "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *U.S. v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997). As this language from *Lanier* suggests, however, due process is satisfied if either the statutory language or existing case law provided adequate notice that the statute covered the conduct at issue.

> The only way the New York courts could have applied a rule of law that contradicts the governing law set forth in the Supreme Court's fair notice precedents would have been to uphold a defendant's conviction for a crime where the defendant *could not* have discerned the scope of the convicting law's prohibitions even by searching the statutory and other laws defining the alleged crime.

*Lurie v. Wittner*, 228 F.3d 113, 128 (2d Cir. 2000) (emphasis in original), *cert. denied*, 532 U.S. 943 (2001). As respondent notes, in *People v. Varas*, 110 A.D.2d 646, 487 N.Y.S.2d 577 (N.Y. App. Div. 1985), *leave denied*, 65 N.Y.2d 701, 491 N.Y.S.2d 1042, 481 N.E.2d 270, the Appellate Division, Second Department, upheld the conviction of a licensed doctor who had violated Education Law § 6512 by hiring a person he knew to be unlicensed and allowing her to practice medicine in his office. *Id.* at 648. Thus, long before Corines engaged in the conduct for which he was charged, Section 6512 had already been interpreted and applied such that petitioner had fair warning that his conduct was criminal. Accordingly, I respectfully recommend that this aspect of Corines' petition be denied.

### 2. **Sufficiency of the Evidence**

Petitioner contends that there was insufficient evidence at trial to support a finding that Santi "practiced medicine." Habeas Pet. Ground 2. As discussed above, three witnesses described how Santi started an I.V. line, and how they felt once the line was inserted. Corines challenges the reliability of the testimony provided by these witnesses.

In reviewing a collateral challenge to a state conviction on the grounds that the verdict was not sufficiently supported by the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Given this test, a habeas petitioner "bears a very heavy burden" when he seeks to establish that the state court's rejection of his legal insufficiency claim was contrary to, or an unreasonable application of, *Jackson*. *Eingaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (*quoting Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

20

Here, the only truly contested issue of fact at trial was whether Santi administered anesthesia through the I.V. lines she ran for the three patients who testified for the prosecution. Trevor Locke felt a warm sensation when the I.V. started to drip, and recalled Corines seeing him only after the IV had been started, finding him awake and telling him to "give it some time" before returning five or ten minutes later to perform a colonoscopy. On two occasions, Andrea Lopez felt the effects of medication almost immediately after Santi introduced an I.V. line. Finally, Mary Brosnan went from feeling very nervous to feeling very relaxed and calm immediately after Santi placed the I.V. needle in her hand, and was struggling to remain awake by the time she first saw Corines. Based on the testimony of these patients, particularly when it is considered together, a rational trier of fact could have concluded that Santi administered anesthesia to them. Trial Tr. 595-97, 606.

Although petitioner captions his claim as one of "insufficient evidence," Corines does no more than challenge the credibility and reliability of the prosecution witnesses' testimony. The credibility and reliability of witnesses and the weight afforded their testimony, however, are the exclusive province of juries, and a "a district court cannot second-guess a jury's credibility determination upon review of a habeas petition." *Ayala v. Ercole*, 2007 WL 1135560, at *8 (E.D.N.Y. Apr. 17, 2007) (citing cases for this proposition). Accordingly, I conclude that Corines' sufficiency claim is without merit, and respectfully recommend that it be denied.

### 3. Jury Charge on Reasonable Doubt and Elements of Section 6512(1)

Corines argues that the trial court failed to instruct the jury properly with respect to a) the prosecution's burden to prove he was guilty beyond a reasonable doubt; and b) the elements of Education Law § 6512(1). Am. Habeas Pet. Ground 6.

State trial jury instructions are generally matters of state law, and challenges to them are therefore not typically subject to federal habeas review. *See Morales v. Keane*, 1994 WL 38668, at *3 (S.D.N.Y. Feb. 4, 1994). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) (holding that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Accordingly, in asserting that the trial court's instructions were improper, Corines again "faces a substantial burden." *DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). To prevail, Corines must demonstrate that the instruction was not merely "undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396 (1973); *see also DelValle*, 306 F.3d at 1200-01; *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). In weighing the prejudice from an allegedly improper charge, the challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400; *see also Estelle*, 502 U.S. at 72, 112 S. Ct. at 482. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400.

### a. Court's Charge on Reasonable Doubt

Corines first argues that the jury charge "failed to include language which clearly conveyed the concept that the evidence must exclude beyond a reasonable doubt and to a 'moral certainty' every reasonable hypothesis but that of guilt." Am. Habeas Pet. Ground 6. Petitioner's argument fails because there is no requirement that the phrase "moral certainty" or any other particular words be used when instructing a jury on the meaning of proof beyond a reasonable

doubt.  In fact, the Supreme Court has cautioned against using the phrase "moral certainty" when defining reasonable doubt for jurors.  *Victor v. Nebraska*, 511 U.S. 1, 16-17, 114 S. Ct. 1239, 1248 (1994).

A charge on reasonable doubt is constitutionally infirm only when "there is 'a reasonable likelihood that the jury understood the instructions to allow conviction'" even absent proof of every element of the charged offense beyond a reasonable doubt.  *Victor*, 511 U.S. at 6, 114 S. Ct. at 1243; *see also Justice v. Hoke*, 45 F.3d 33, 34 (2d Cir. 1995).  "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof."  *Victor*, 511 U.S. at 5, 114 S. Ct. at 1243.  Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."  *Holland v. U.S.*, 348 U.S. 121, 140, 75 S. Ct. 127, 138 (1954).  *See also* L. Sand, et al., *Modern Federal Jury Instructions – Criminal*, ¶ 4.01, at pp. 4-10 (pointing out that "the Supreme Court has never held that any definition [of reasonable doubt] at all is required").

Applying these principles to petitioner's case, it is clear that the trial judge adequately charged the jury on reasonable doubt.  In her preliminary instructions, the trial judge cautioned the jury that the assistant district attorney "has the burden and she alone has the burden to prove beyond a reasonable doubt each and every element of the crimes charged, including the identity of the defendants as the people who committed the crimes charged.  The defendants have no burden whatsoever."  Trial Tr. 365.  The judge emphasized that the defendants were before the court, presumed innocent, "until you, after your deliberations, have determined that they are either guilty because the People met their burden of proof or they're not guilty because the

People did not meet their burden of proof." *Id.* at 364. The judge then went on to provide the jury with a preliminary explanation of the concept of reasonable doubt, for example instructing the jurors that "reasonable doubt is something that if you thought about it, you could come up with a reason as to why you have that doubt." *Id.* at 365.

At the conclusion of the evidence the judge charged the jury on the prosecution's burden to prove each element of the crime beyond a reasonable doubt again, as follows:

> As you look over here at Mrs. Santi and Dr. Corines right now, they are presumed innocent. . . . That presumption of innocence remains with them as you go into the deliberation room and until and unless you make a determination that the People have proved beyond a reasonable doubt each and every element of each of the crimes charged, then and only then can you make a determination of guilt. . . . Reasonable doubt is a doubt for which you can find a reason within the evidence presented in the trial. Reasonable doubt is almost one of those words that you define with the words themself; a doubt for which you can find a reason within the evidence presented at this trial. . . . [Y]ou are not permitted to speculate about evidence that is not before you. But, if you don't feel that the evidence presented was sufficient, you can base your reasonable doubt on that.

Trial Tr. 879-81. Finally, after reviewing the elements of the offenses charged, the trial court again instructed the jurors that "if you're satisfied that the People have proved these three elements beyond a reasonable doubt, you may find the defendant guilty. . . . On the other hand, if you find that the People failed to prove these three elements beyond a reasonable doubt, then you must find the defendant Corines not guilty." Trial Tr. 893.

The trial court's instruction properly did not equate reasonable doubt with "substantial" or "grave" doubt, and appropriately distinguished between doubt based on the evidence, or lack of evidence, and doubt based upon speculation or guesswork. *Victor*, 511 U.S. at 19-20, 114

S. Ct. at 1250.  Nor did the trial court instruct the jurors that, absent proof beyond a reasonable doubt, they *may* acquit; the instruction explicitly stated that the jurors *must* find Corines not guilty if the prosecution failed to prove each element beyond a reasonable doubt.  *Cf. U.S. v. Birbal*, 62 F.3d 456, 460 (2d Cir. 1995).  In short, the trial court repeatedly instructed the jurors that the prosecution bears the burden of proving each element of the charged offenses beyond a reasonable doubt, properly explained to them that reasonable doubt is a doubt for which there is a reason, and impressed upon them that reasonable doubt may arise from insufficiencies in the prosecution's evidence.  Thus, the trial court's reasonable doubt instruction was in no way contrary to federal law.

Corines also contends that "[t]he jury was not instructed that they were required to confirm proof of circumstantial facts beyond a reasonable doubt."  Am. Habeas Pet. Ground 6. Contrary to the suggestion implicit in Corines' argument, the burden of proof beyond a reasonable doubt applies to the elements of the crimes charged; "the burden does not operate upon each of the many subsidiary facts on which the prosecution may collectively rely to persuade the jury that a particular element has been established beyond a reasonable doubt."  *U.S. v. Viafara-Rodriguez*, 729 F.2d 912, 913 (2d Cir. 1984).  *See also Brown v. Greene*, 2007 WL 3286638, at * 3-4 (S.D.N.Y. Nov. 6, 2007); *U.S. v. Reich*, 420 F. Supp. 2d 75, 86 (E.D.N.Y. 2006).  Moreover, the trial judge explained the concept of circumstantial evidence in some detail, and made it quite clear that proof of elements based on circumstantial evidence must meet the reasonable doubt standard:

> The difference between direct evidence of guilt and circumstantial evidence of guilt lies in the number of steps the jury is required to take.  When the evidence is direct evidence of guilt, the only step

25

the jury is required to take is to determine the credibility of such direct evidence and decide whether such evidence is sufficient to establish guilt beyond a reasonable doubt. With circumstantial evidence, the jury is first required to determine the credibility of the evidence as to the circumstantial facts. But then, the jury is required to take an additional second step and decide whether the proved circumstantial facts reasonably and logically compel the conclusion that the defendant is guilty.

Trial Tr. 877-79.

For all these reasons, I conclude that the trial court's charge on reasonable doubt was proper, and that Corines' challenge to the charge is completely lacking in merit.

### b. Charge on the Application of Education Law § 6512(1) to the Defendants

Corines next objects to the trial judge's instruction to the jury that section 6512(1) has two parts that apply to each of the defendants. Am. Habeas Pet. Ground 6. After reading the text of the statute verbatim, the court instructed the jury that:

There are two parts to this law. The first part of the law says that a person who is not licensed to practice, in this case, medicine[,] violates the law when they practice that profession. The second part of the statute says that anyone who knows a person is not licensed but aids or abets them in practicing, in this case, medicine[,] is also guilty of violating this law.

Tr. 884. The judge then went through the specific elements of the statute that must be proven beyond a reasonable doubt in order to convict each defendant. Tr. 885-93.

This aspect of Corines' petition is essentially a reiteration of his first claim regarding the application of Section 6512(1) to licensed professionals. Because, for the reasons discussed above, Education Law § 6512(1) has been held by the New York Court of Appeals to apply both to unlicensed persons who practice medicine and licensed persons who aid or abet an unlicensed person to practice medicine, there was no error in the trial judge's charge on the application of

26

the statute to petitioner. Therefore, there is no merit to this claim.

### 4. Court's Response to Jury Question Regarding Introducing an I.V.

As noted above, Corines' primary contention at trial was that, while Santi may have started I.V. lines in her role as a medical assistant, she did not administer anesthesia. The trial court repeatedly instructed the jurors that, to convict, they must first find beyond a reasonable doubt that Corines aided and abetted Santi in practicing medicine upon Brosnan, Locke and Lopez "through the administration of anesthesia." Trial Tr. 878-79, 887-90, 892-93.

During their deliberations, the jurors sent out a note asking whether, "[u]nder the conditions of Dr. Santi's suspension and as performing the duties of a medical assistant, was Dr. Santi permitted to introduce an I.V. to a patient." Trial Tr. 906. After hearing from the parties at some length, the trial court decided to reiterate the relevant portion of its instructions, and answered the jury's note by reviewing the elements of the charged offenses. Trial Tr. 917-19. The judge advised the jury, in pertinent part, that the prosecution was required to prove beyond a reasonable doubt that Santi practiced medicine upon Brosnan, Locke and Lopez "through the administration of anesthesia." Trial Tr. 919. Corines challenges the court's response as inadequate and not meaningful, and argues that the judge should have answered the question directly. Habeas Pet. Ground 3.

Upon a request from the jury for further instruction or information, New York law provides only that the court "must give such requested information or instruction as the court deems proper." N.Y. PENAL LAW § 310.30. In petitioner's case, the Court of Appeals noted that a court "must give meaningful supplemental instructions," but also recognized that a reiteration of the original charge may suffice. *Santi*, 3 N.Y.3d at 248.

> Simple reiteration of an original instruction may, under appropriate circumstances, constitute a meaningful response sufficient to satisfy the statutory mandate. Specifically, when the original instruction is accurate and '[w]here the jury expresses no confusion [regarding the original charge],' a simple reiteration of the original instruction suffices as a meaningful response. This case gives rise to the unique circumstances under which a rereading of the original charge suffices.

*Id.* at 248 (internal citations omitted). The Court of Appeals concluded that "[w]hile it might have been better to address the note more directly, here rereading the original, proper instruction was sufficient to convey the appropriate message to reasonable jurors. The jury's note had not expressed confusion about the meaning of that instruction." *Id.* at 249.

As discussed above, state court trial jury instructions are generally not subject to federal habeas review. Here, petitioner points to no federal constitutional provision that was violated by the trial court's response to the jury's note. Moreover, the portion of the charge reiterated by the trial judge *was* responsive to the inquiry posed by the jury; the trial court reiterated that, to convict either Santi or Corines, the jury had to find that Santi had practiced medicine "through the administration of anesthesia." A reasonable juror would have understood this instruction as requiring proof that Santi did more than "introduce an I.V. to a patient." *See Bingham v. Zolt*, 66 F.3d 553, 563 (2d Cir. 1995) (noting the "strong presumption that the jury in reaching its verdict complies with [the court's] instructions").

Corines has failed to establish that the trial court's response to the jury's question, or the decision of the New York Court of Appeals with respect to that response, was contrary to or unreasonably applied federal law. Accordingly, this aspect of Corines' petition is without merit.

**5. <u>Judicial Misconduct or Bias</u>**

Petitioner claims that the trial judge was biased against him and engaged in misconduct. Am. Habeas Pet. Ground 8.  In support of this aspect of his petition, Corines contends that the judge knew that the indictment in his case was flawed but nevertheless allowed the prosecution to proceed against him.  *Id*.  In addition, petitioner contends that various statements by the trial judge demonstrated her bias against him.  *Id*.

Corines does not explain why he complains that the indictment was flawed, but read in context, his contention appears to be a rehashing of his claim that a licensed professional may not be prosecuted under Education Law § 6512(1).  My reasons for rejecting this claim are set forth in detail above, and do not bear repeating here.

Second, petitioner objects that various comments made by the trial judge and decisions she rendered on certain motions demonstrated her bias.  Petitioner cites the following three statements as evidencing the trial judge's bias:

i) (in her decision denying Corines' motion to dismiss the verdict) "It is inconceivable to this court, that the Legislature intended to exempt a licensee from being prosecuted for practicing without a license as an aider and abettor and restrict punishment for such conduct simply to that permitted by the Board of Regents pursuant to Section 6511 of Title 8."  Am. Habeas Pet. Ground 8.

ii) (in her response to arguments objecting to the jury charge) "Even if this court found that the defendant's claim required relief as a matter of law, upon examining the circumstantial evidence charge given, the relief requested by the defendant would be denied."  *Id*.

iii) (during the post-trial hearing concerning potential juror misconduct in response to

defense attorneys' objections that the court was unduly restricting questioning) "If [the Appellate Division] send[s this case] back 5000 times, . . . it just keeps us all busy . . . and I have no concern about whether it comes back again or again and again." *Id.*

The Fourteenth Amendment requires "'a fair trial in a fair tribunal' before a judge with no actual bias against the defendant . . . ." *Bracy v. Gramley,* 520 U.S. 899, 904-05, 117 S. Ct. 1793, 1797 (1997) (*quoting Withrow v. Larkin,* 421 U.S. 35, 46, 95 S. Ct. 1456, 1464 (1975)).

> First, judicial rulings alone almost never constitute a valid basis for a [claim of] bias or partiality . . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a [claim of] bias or partiality . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger.

*Liteky v. U.S.*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157 (1994). Moreover, "[i]n any evaluation of the fairness of a trial, the entire trial record must be considered and any comments viewed in the context they were made." *Messa v. Artus*, 2006 WL 3370438, at *6 (E.D.N.Y. Nov. 20, 2006). *See also Taus v. Senkowski*, 293 F. Supp. 2d 238, 249-250 (E.D.N.Y. 2003) (noting that "[i]t is not the role of a federal habeas court to supervise the conduct of state court judges").

The first two statements Corines challenges merely express the judge's view concerning the legal issues raised by Corines at trial. I note, by the way, that both the Appellate Division and

the New York Court of Appeals affirmed the trial court's resolution of these legal issues.

Although the third statement Corines points to may reveal some impatience, it is hardly evidence

of bias or a high degree of antagonism. Moreover, these statements were made outside the

presence of the jury, and there is as a result no risk that jurors were affected by the judge's

statements. *See U.S. v. Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) ("The test is whether the jury was

so impressed with the judge's partiality to the prosecution that it became a factor in determining

the defendant's guilt, or whether 'it appear[ed] clear to the jury that the court believe[d] the

accused is guilty.'") (citations omitted). Finally, the trial record, read as a whole, does not

evidence any bias. Petitioner has, therefore, failed to demonstrate any misconduct or bias by the

trial judge, and I respectfully recommend that this claim be denied.

### 6. **Juror Misconduct Claim**

Petitioner contends that the jury was "confused" about the legality of a non-physician

starting an I.V. line, and relied on a statement by a juror who worked in a hospital that it was

unlawful for anyone other than a doctor or registered nurse to insert an I.V. Habeas Pet. Ground

4. In addition, petitioner argues that, at the hearing after trial, the court improperly excluded

testimony about whether or not the jury considered information outside of the record during

deliberations. *Id*.

As noted above, Corines argued on direct appeal that one or more jurors were employed

in the health care field and may have improperly influenced the jury by injecting their personal

knowledge and expertise into the deliberations. The Appellate Division directed the trial court to

hold a hearing on the issue. Eleven of the trial jurors testified at that hearing. One juror ("the

nurse") testified that she was employed as a nurse and that, at her place of employment, only

doctors and registered nurses may start I.V.'s. Hearing Tr. 38, 44-45. This juror was asked at the hearing whether she shared this information with her fellow jurors, and her responses were somewhat unclear. Hearing Tr. 51 (indicating she did not tell her fellow jurors that only doctors and registered nurses were authorized to start I.V. lines at her place of employment), 162 (indicating that the juror believed it "wasn't [her] place" to answer questions about the medical field), and 167-68 (stating that she may have told her fellow jurors that only a licensed professional may administer an I.V.). Of the remaining jurors, one testified that the nurse told her fellow jurors that a medical assistant may not start an I.V., and that this information helped the jury with its deliberations. Hearing Tr. 60. Another juror had a fairly vague recollection that the nurse provided some information about procedures, including information about I.V.'s. Hearing Tr. 108-09. The remaining jurors, however, either did not remember that a fellow juror was employed as a nurse, or could not recall the nurse providing any information about I.V.'s or medical procedures based upon her own experience or knowledge. Hearing Tr. 30, 35, 69-70, 80, 88, 101, 123, 131, 136.

Having heard the testimony, the trial court denied petitioner's motion to set aside the verdict, concluding that the nurse did not improperly influence the jury's verdict. The Appellate Division affirmed, as did the New York Court of Appeals, concluding that the juror was not an "expert," did not conduct any experiment or investigation that influenced the jury, and that "she merely gave her lay opinions regarding the introduction of an I.V. line, drawing on both her life experiences and the trial evidence. This was proper." 3 N.Y.3d at 249-50.

A federal court may overturn a state court conviction on the ground of juror misconduct only in egregious circumstances. *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)

(affirming the district court's denial of habeas relief where two jurors "might have experienced severe emotional distress within the jury room" and "subjectively felt pressured into rendering guilty verdicts").  The question presented here is whether the jury's deliberations, to the extent they were influenced by information outside of the trial record, violated petitioner's Sixth Amendment right.  *See Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961) (recognizing that the Sixth Amendment right to confront witnesses includes the right to a verdict "based upon the evidence developed at the trial").

When deliberating, jurors are permitted to rely upon their "common knowledge drawn from their life experiences," as well as any "specific knowledge about a particular subject."  *U.S. v. Chin*, 275 F. Supp. 2d 382, 384 (E.D.N.Y. 2003).  Thus, not all information outside the record that is considered by a jury gives rise to a viable federal habeas claim.  *See Loliscio v. Goord*, 263 F.3d 178 (2d Cir. 2001) (finding no prejudice where jurors had heard negative rumors about the defendant and the victim outside of the trial); *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994) (finding that a juror's statement that businesses were not open in the neighborhood where the crime occurred was insufficiently prejudicial to warrant habeas relief); *U.S. v. Owen ex rel McMann*, 435 F.2d 813, 818 (2d Cir. 1970) (recognizing that the focus on a habeas claim of juror misconduct is on the nature of the information and the likelihood of prejudice caused by the extraneous information); *Chin*, 275 F. Supp. 2d at 385 (finding that a juror's alleged statements concerning Chinese immigrant families was not extraneous, prejudicial material).

In rejecting petitioner's claim of juror misconduct, the New York courts did not unreasonably apply clearly established federal law.  The testimony given by the juror who worked as a nurse was unclear, sometimes suggesting that she did not share work-related

information about who was permitted to start an I.V. with her fellow jurors, and at other times suggesting that she did. Only two of the other jurors recalled another juror sharing some personal experiences about who administers I.V.'s and anesthesia at her place of employment. *Id*. Thus, the assertion that the jury was unduly influenced by the nurse has only weak evidentiary support in the record.

Moreover, the fact the nurse is alleged to have shared with her fellow jurors – that only registered nurses and licensed doctors are permitted to start I.V.'s at her place of employment – had only limited relevance to the question before the jury. As discussed in detail in Section 4 of the this report, above, the issue at trial, as explicitly and repeatedly stated in the jury instructions given by the court, was whether Santi practiced medicine by administering anesthesia, not merely by starting an I.V. line. Thus, this aspect of Corines' petition lacks merit.

Petitioner is also wrong to claim that the trial court erred when it limited the scope of questions put to the jurors regarding their deliberations. This limitation was not contrary to federal law; to the contrary, Federal Rule of Evidence 606(b), while it allows testimony about "whether extraneous prejudicial information was improperly brought to the jury's attention," prohibits inquiry into "any matter or statement occurring during the course of the jury's deliberations" or any juror's "mental processes" in connection with reaching a verdict. *See Loliscio*, 263 F.3d at 189 n.6. The balance struck by the trial court at the post-trial hearing was consistent with the provisions of Rule 606(b). Thus, for example, during the questioning of the juror employed as a nurse, the court permitted Corines' counsel, over objection, to inquire whether the juror used information she learned as a result of her work during deliberations, and whether she discussed "anything about what was included" in medical practice, but sustained an

objection to a question asking whether the juror said anything to other jurors concerning the administration of intravenous lines. Hearing Tr. 50-51. The questions permitted by the court concerned whether extraneous information was presented during deliberations, while the precluded question was aimed more generally at what jurors discussed during their deliberations, regardless of whether it involved extraneous information or the evidence presented at trial. Accordingly, this aspect of Corines' petition should be denied as well.

### 7. Ineffective Assistance of Counsel Claim

Corines contends that he was deprived of meaningful representation in violation of his Sixth Amendment right to counsel. Habeas Pet. Ground 5. Specifically, Corines argues that his attorney was ineffective for failing to consult an expert in preparation for trial or to present any expert at trial. *Id.* On his motion for a stay, petitioner presented two additional claims of ineffective assistance of counsel. Docket Entry 32. Corines contends that he was deprived of the effective assistance of counsel when his attorney failed to object to the court's jury charge on Education Law § 6512(1) or to the circumstantial evidence charge. In addition, petitioner argues that defense counsel did not adequately cross-examine the prospective jurors during voir dire.

The Sixth Amendment right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 (1970) (emphasis added). A court reviewing an ineffective assistance of counsel claim applies a two-part test: the petitioner must establish 1) that counsel was deficient; and 2) that petitioner suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and a petitioner must overcome a strong presumption that counsel's conduct was reasonable and

constituted "sound trial strategy." *Id*. at 689, 104 S. Ct. at 2065. Having established that counsel's performance was deficient, a petitioner must then "affirmatively prove prejudice." *Id.* at 693, 104 S. Ct. at 2067. To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome" since virtually all of counsel's acts have some effect. *Id.* Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

"[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." *U.S. v. Best*, 219 F.3d 192, 201-02 (2d Cir. 2000) (internal quotation marks omitted). This general rule applies to an attorney's strategic decision about whether to consult or call an expert witness. Although a failure to present expert testimony may constitute ineffective assistance when "the jury is likely to be incapable of evaluating essential facts" without it, "[w]here an expert would only marginally assist the jury in its role as fact finder, an attorney's decision not to call an expert is more likely to fall within the bounds of reasonable performance and less likely to prejudice the defendant." *U.S. v. Aliotta*, 1998 WL 43015, at *3 (S.D.N.Y. Feb. 3, 1998); *see also Massaro v. U.S.*, 2004 WL 2251679, at *4 (S.D.N.Y. Oct. 5, 2004).

Petitioner asserts that his attorney should have presented expert testimony that 1) an individual's ability to perceive and recall is compromised by the effects of anesthesia, 2) injecting medications into an I.V. line under the direction of a licensed physician is not the unauthorized practice of medicine, and 3) a sensation of "burning in the arm" does not establish that medication was administered. Habeas Pet. Ground 5. Corines, however, fails to support his

petition with an expert affidavit or any other indication that the assertions he makes are accurate or could have been established with testimony obtained from a responsible expert witness. Moreover, petitioner – himself a doctor with expertise in anesthesia – chose to testify, and to call a surgeon, Dr. Chalasni, as a defense witness. Presumably, counsel's failure to question Corines or Chalasni about these matters suggests that the decision not to call an expert was a strategic one. In addition, the extent to which anesthesia impairs an individual's ability to perceive and remember is only marginally relevant here, because the critical testimony offered by the three patients who testified for the prosecution in large part concerned events they perceived before, and to a limited extent immediately after, anesthesia was administered. Finally, whether injecting medication under the supervision of a licensed physician constitutes the unauthorized practice of medicine is a question of law, not expert opinion. For these reasons, petitioner has failed to overcome the strong presumption that counsel's decision not to call an expert was reasonable. *See Farr v. Greiner*, 2007 WL 1094160, at *34 (E.D.N.Y. Apr. 10, 2007) (finding petitioner's claim of ineffective assistance of counsel on the ground that counsel failed to consult an expert without merit and noting that petitioner failed to explain how an expert would have assisted in his defense).

Petitioner's second claim of ineffectiveness is based on trial counsel's failure to object to the court's jury charges with respect to Education Law § 6512 and circumstantial evidence. This argument fails because there were no errors in either charge meriting an objection.

Without clearly explaining his argument, Corines contends that the court's instruction that there are two parts to Education Law § 6512 was a misstatement of the law. Docket Entry 32, pp. 12-13. The portion of the charge with respect to Section 6512 challenged by Corines

reads as follows:

> The first part of the law says that a person who is not licensed to practice, in this case, medicine[,] violates the law when they practice that profession.  The second part of the statute says that anyone who knows a person is not licensed but aids or abets them in practicing, in this case, medicine[,] is also guilty of violating this law.

Trial Tr. 884.  To the extent this argument yet again repeats that Section 6512 does not apply to licensed physicians, it lacks merit for the reasons set forth in detail above.  To the extent petitioner is arguing that the trial court informed the jury that Section 6512(1) has two parts when it does not, this argument is totally lacking in merit as well.  Although the statute does not literally set out the elements of principal and accessorial liability in separate sections, the trial judge simply structured her instruction in a manner that made it easier for the jury to understand without deviating from the elements set forth in the statute in any meaningful way.  No federal law was thereby violated.

Corines' challenge to the circumstantial evidence charge seems to be based on a misreading of the record.  Corines, citing to pages 705-06 of the trial transcript, contends that the trial judge refused to use a pattern jury instruction on circumstantial evidence.  Docket Entry 32, p. 13.  In fact, the portion of the transcript cited by Corines indicates that the judge *agreed* to use a pattern circumstantial evidence charge.  Trial Tr. 706 at lines 14-18.  Moreover, the trial court's instruction on circumstantial evidence was not materially different from various New York pattern instructions.  *See* New York's Criminal Jury Instructions, CJI2d[NY] Circumstantial Evidence;[9] NY PJI Civil 1:70; Trial Tr. 876-79.  Corines does not point out any error in the

---

[9]*Available at* http://www.nycourts.gov/cji/1-General/CJI2d.Circumstantial_Evidence.pdf.

charge, and I discern none.  Accordingly, counsel's failure to object to it was not ineffective.

Finally, Corines contends that counsel was deficient for not adequately questioning potential jurors during voir dire about potential conflicts or bias.  Docket Entry 32 at 16-17. More specifically, Corines argues that counsel should have questioned two jurors who worked in the medical field – including the juror employed as a nurse discussed above – about their experiences with doctors and their knowledge about the administration of I.V.'s and anesthesia. *Id*.  The record reveals that Corines' counsel did question the juror employed as a nurse about the fact that she interacted with doctors regularly, but nevertheless could be a fair juror.  Trial Tr. 238-40.  Although counsel did not directly pose any questions directly to the second juror, she was employed as an assistant to an occupational therapist, not as a nurse or doctor, and presumably had little or no professional exposure to starting I.V. lines.  Trial Tr. 208, 237-45.  In any event, even though a post-trial evidentiary hearing was held to determine whether the jury's deliberations were improperly influenced by matters other than the evidence at trial, Corines has failed to identify any prejudice he suffered as a result of his counsel's decision not to question the second juror directly.

Finally, the trial transcript reveals thorough, zealous advocacy by petitioner's counsel. Defense counsel made motions for severance, mistrial, dismissal, to exclude, and for curative instructions.  Trial Tr. 6, 397, 437, 442, 451, 479, 510, 513, 608, 619-22, 638, 674, 702, 783, 787, 800, 867.  In addition, defense counsel made numerous (mostly successful) objections throughout the trial.  Trial Tr. 406, 412, 418-20, 431, 443, 503, 504, 507, 543, 549, 579, 627, 629-30, 634, 650, 844.  Corines' trial counsel also presented a vigorous summation that stressed some of the same core issues that Corines relies on in his habeas petition.  Trial Tr. 827 (arguing

that the prosecution failed to offer any evidence about whether a medical assistant could start an I.V.), 835 (arguing that the prosecution did not present expert testimony establishing that the sensations described by the patient-witnesses indicated the administration of anesthesia or other medication),

For all these reasons, I respectfully recommend that petitioner's claim of ineffective assistance of counsel be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Corines' petition for a writ of habeas corpus, and his motion for summary judgment, be denied in their entirety. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court within ten days of this Report and Recommendation and, in any event, on or before June 27, 2008. Failure to file timely objections may waive the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
June 10, 2008

*U:\eoc 2007\corines\final rr 061008.wpd*

40