UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PETER CORINES,

**MEMORANDUM & ORDER**

05-CV-2056 (NGG) (SMG)

Petitioner,

-against-

SUPERINTENDENT, Otisville Correctional
Facility,

Respondent.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Peter Corines ("Petitioner") was convicted following a jury trial of four counts

of Unauthorized Practice of Medicine in violation of New York Education Law § 6512(1). The

conviction arose from Petitioner's employment of Ana Marie Santi, an anesthesiologist whose

license had been suspended, and was based on the allegation that Petitioner aided and abetted

Santi's unlicensed practice of medicine. Petitioner's conviction was affirmed by the Appellate

Division, Second Department, and then by the New York Court of Appeals. People v. Corines,

764 N.Y.S.2d 117 (N.Y. App. Div. 2003), aff'd sub nom People v. Santi, 3 N.Y.3d 234 (2004).

Petitioner has filed a Petition and Amended Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254. (Docket #3, #12.) He has also filed a Motion for Summary

Judgment on several claims in his Petition. (Docket # 38.) In a Report and Recommendation

("R&R") dated June 10, 2008, familiarity with which is assumed, Magistrate Judge Steven M.

Gold recommended that Petitioner's Motion for Summary Judgment be denied and his Petition

be dismissed. (Docket #55.) Before the court is Petitioner's Objection to Report and Recommendation ("Objections"). (Docket #60.)

Pursuant to 28 U.S.C. 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, this court conducts a *de novo* review of those portions of the R&R to which Petitioner has objected. Petitioner has waived his right to further judicial review of those portions of the R&R to which he has not timely objected. Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002).[1] For the reasons discussed below, Petitioner's Objections to the R&R are denied, and Judge Gold's R&R is adopted in full.

## I. LEGAL STANDARD

The substantive claims raised in the Petition are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Price v. Vincent, 538 U.S. 634, 639-40 (2003).

The Second Circuit has explained that a state court's decision is "contrary to" clearly established federal law "if the state court reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." Earley v. Murray, 451 F.3d

---

[1] The court has reviewed those portions of the R&R to which Petitioner has not objected and finds them to be thorough, well-reasoned, and well-founded in applicable law. See Urena v. New York, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (where no timely objection has been made, the "court need only satisfy itself that there is no clear error on the face of the record.").

71, 74 (2d Cir. 2006) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). An "unreasonable application" of federal law occurs when "the state court identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." Earley, 451 F.3d at 74 (citing Williams, 529 U.S. at 413). A federal court reviewing a habeas petition pursuant to this clause must consider "whether the state court's application of clearly established federal law is objectively unreasonable, where objectively unreasonable means 'some increment of incorrectness beyond error.'" Id. (internal citations omitted). Unreasonableness is "a substantially higher threshold" than mere incorrectness. Schriro v. Landrigan, --- U.S. ---, 127 S. Ct. 1933, 1939 (2007).

## II.  PETITIONER'S OBJECTIONS

### A. Petitioner's Claim that the Construction of N.Y. Education Law § 6512(1) by the New York Court of Appeals Was Unconstitutional

Petitioner claims that the indictment against him was flawed, contending that the statute he was accused of violating, New York Education Law § 6512(1), applies only to persons who are not authorized to practice medicine, and at the time of the alleged offenses, he was authorized to practice medicine.[2] (Pet. Ground 1.) Judge Gold recommended that this claim be denied because the trial court, the Appellate Division, and the New York Court of Appeals rejected Petitioner's interpretation of Section 6512(1), and a federal court has no authority to construe a state statute differently from the highest court of the state. (R&R 17-19) (citing Johnson v.

---

[2] Section 6512(1) provides that:

> Anyone not authorized to practice under this title who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who practices any profession as an exempt person during the time when his professional license is suspended, revoked or annulled, or who aids or abets an unlicensed person to practice a profession, or who fraudulently sells, files, furnishes, obtains, or who attempts fraudulently to sell, file, furnish or obtain any diploma, license, record or permit purporting to authorize the practice of a profession, shall be guilty of a class E felony.

N.Y. Educ. Law § 6512(1).

Fankell, 520 U.S. 911, 916 (1997).) Judge Gold noted that even if he concluded – which he did not – that the New York Court of Appeals incorrectly construed the statute, Petitioner would not necessarily be entitled to habeas relief, because "a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." (Id. at 19) (citing Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).)

Although Judge Gold noted that Petitioner had not articulated any basis for challenging the New York courts' ruling under the U.S. Constitution or U.S. Supreme Court precedent, he nevertheless considered and rejected the potential claim that the interpretation of New York Court of Appeals was so novel that it denied Petitioner "fair warning" that his conduct was criminal, as required by the Due Process Clause of the U.S. Constitution. (R&R 19-20.) Judge Gold concluded that Petitioner had "fair warning" that his conduct was criminal, because the Appellate Division had previously upheld the conviction of a licensed doctor under the same statute. (Id. at 20) (citing People v. Varas, 110 A.D.2d 646 (N.Y. App. Div. 1985), leave denied, 65 N.Y.2d 701.)

In his Objections, Petitioner argues that the interpretation of Section 6512 by the New York Court of Appeals is unconstitutional because it did not allow him fair warning or notice of the criminality of his conduct, was *ex post facto*, and renders the language of the statute ambiguous. (Pet. Obj. Tab 1 at 1.) The court construes Petitioner's Objections to argue that the decision of the New York Court of Appeals is "contrary to" clearly established federal law, the standard for relief under AEDPA. For the reasons discussed below, Petitioner's claim must be denied.

First, Petitioner had "fair notice" that his conduct was criminal. In United States v. Lanier, the Supreme Court held that "due process bars courts from applying a novel construction

of a criminal statute to conduct that neither the statute nor *any* prior judicial decision has fairly

disclosed to be within its scope." 520 U.S. 259, 266 (1997) (emphasis added); <u>see also</u> <u>Rogers v.</u>

<u>Tennessee</u>, 532 U.S. 451, 457 (2001) (<u>citing</u> <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 352

(1964) for the proposition that deprivation of the right of fair warning can result not only from

vague statutory language but also from an unforeseeable and retroactive judicial expansion of

narrow and precise statutory language). "Fair notice" is a right of "federal constitutional

dimension, grounded in the due process guarantee, established by the Supreme Court . . . ."

<u>Lurie v. Wittner</u>, 228 F.3d 113, 126 (2d Cir. 2000) (internal quotation marks and citations

omitted), <u>cert. denied</u>, 532 U.S. 943 (2001). In applying the Supreme Court's "fair notice"

requirement to a habeas petition, the Second Circuit noted that:

> The only way the New York courts could have applied a rule of law that
> contradicts the governing law set forth in the Supreme Court's fair-notice
> precedents would have been to uphold a defendant's conviction for a crime where
> the defendant *could not* have discerned the scope of the convicting law's
> prohibitions even by searching the statutory and other laws defining the alleged
> crime.

<u>Id</u>. Here, Petitioner could have discerned the scope of the convicting law's prohibitions. As

Judge Gold noted, the New York Appellate Division in the Second Department had already

upheld the conviction of a licensed doctor under the statute in <u>People v. Varas</u>, 110 A.D.2d 646

(N.Y. App. Div. 1985), <u>leave denied</u>, 65 N.Y.2d 701. Contrary to Petitioner's Objections, it does

not matter that the New York City Criminal Court construed Education Law § 6512(1) to require

that the defendant himself be a person not authorized to practice a profession. <u>People v. Mauro</u>,

147 Misc. 2d 281, 289 (N.Y. Crim. Ct. 1990). <u>Lanier</u> requires only that "any prior judicial

decision" include the conduct at issue as within the scope of the statute. 520 U.S. at 266. The

Appellate Division's decision in Varas therefore suffices to give Petitioner fair warning.[3]

Second, the interpretation of the New York Court of Appeals does not render the statute

ambiguous such that it is "contrary to" clearly established federal law. The decision at issue held

that licensed practitioners such as Petitioner are subject to criminal liability under Section

6512(1) when they intentionally aid or abet an unlicensed person to practice medicine. Santi, 3

N.Y.3d at 243-45. Although Section 6512(1) begins with the phrase "[a]nyone not authorized to

practice under this title," the New York Court of Appeals concluded that to allow licensed

professionals to engage in conduct that would otherwise be criminal was contrary to the

legislature's intent and would result in an "unreasonable or absurd" application of the law. Id. at

243-44. Petitioner contends that because this construction penalizes either unlicensed persons or

licensed professionals who aid or abet an unlicensed person, it renders the language of the statute

ambiguous. But the language is not ambiguous. Moreover, the New York courts' interpretation

of the statute to cover Petitioner's conduct is not "contrary to" clearly established federal law.

Lanier described "three related manifestations" of the fair warning requirement: 1) the vagueness

doctrine, which prohibits enforcement of a statute so vague that people must "necessarily guess

at its meaning"; 2) the rule of lenity, which resolves ambiguity in a criminal statute as to apply it

only to conduct clearly covered; and 3) due process, which bars courts form applying a novel

construction of a criminal statute "to conduct that neither the statute nor any prior judicial

_____

[3] Petitioner also claims in his Objections that the decision of the New York Court of Appeals is *ex post facto*. While limitations on *ex post facto* judicial decisionmaking are "inherent in the notion of due process" in the Supreme Court's "fair warning" cases, the Constitution's *Ex Post Facto* Clause applies only to the legislature and not the judicial branch of government. Rogers, 532 U.S. at 456; see also U.S. Const. Art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."). While the Due Process Clause prohibits an "unforeseeable judicial enlargement" of a criminal statute, Bouie v. Columbia, 378 U.S. 347, 354 (1964), the decision of the Court of Appeals was not "unforeseeable" because of Varas, 110 A.D.2d 646, a prior state court decision construing Section 6512(1) to apply to licensed doctors such as Petitioner. Cf. Bouie, 378 U.S. at 354 (noting that none of the state court cases interpreting the statute at issue had ever given the "slightest indication" that the statute covered a different act from that specified in the statutory text.).

decision has fairly disclosed to be within its scope." <u>Lanier</u>, 520 U.S. at 266. The court emphasized that "[i]*n each of these guises*, the touchstone is whether the statute, either standing alone *or as construed*, made it reasonably clear at the relevant time that the defendant's conduct was criminal." <u>Id</u>. (emphasis added). Here, the Appellate Division's decision in <u>Varas</u> made clear that the statute applied to Petitioner. The decision of the Court of Appeals is thus not "contrary to" clearly established federal law.

Judge Gold's recommendation that this ground be denied is therefore adopted.

## B. Petitioner's Claims Regarding the Jury Charge

Petitioner argues that the trial court failed to instruct the jury properly with respect to 1) the prosecution's burden of proof beyond a reasonable doubt; and 2) the elements of Section 6512(1). (Am. Pet. Ground 6.) In his Objections, Petitioner stated that he does not object to the instructions regarding reasonable doubt as applied to direct evidence, but argues that the instructions on reasonable doubt as to circumstantial evidence confused the jury and were "materially different" from New York pattern instructions. (Obj. Tab 1 at 16.) He also argues that the trial court's instructions on the elements of Section 6512(1) ignored the ambiguity of the statute and failed to state properly the law as written at that time. (<u>Id</u>. at 14-15.)

State trial jury instructions are generally matters of state law, <u>Morales v. Keane</u>, No. 92-cv-8189 (LBS), 1994 WL 38668, at *3 (S.D.N.Y. Feb. 4, 1994), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Petitioner faces a "substantial burden" in challenging the trial court's instructions. <u>DelValle v. Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002). To prevail, Petitioner must demonstrate that the instruction was not merely "undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the

defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); DelValle, 306 F.3d at 1200-01. In weighing the prejudice from an allegedly improper charge, the challenged instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 147; Estelle, 502 U.S. at 72. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147.

On the trial court's charge on reasonable doubt, Petitioner argues that "the jury was not instructed that they were required to confirm proof of circumstantial facts beyond a reasonable doubt." (Am. Pet. Ground 6; Obj. Tab 1 at 17.) Judge Gold correctly noted that contrary to the suggestion implicit in Petitioner's argument, the burden of proof beyond a reasonable doubt applies to the elements of the crimes charged; "the burden does not operate upon each of the many subsidiary facts on which the prosecution may collectively rely to persuade the jury that a particular element has been established beyond a reasonable doubt." (R&R 25) (quoting United States v. Viafara-Rodriguez, 729 F.2d 912, 913 (2d Cir. 1984).) Having reviewed the trial transcript, the court agrees with Judge Gold that the trial judge explained the concept of circumstantial evidence in some detail and made quite clear that the proof of elements based on circumstantial evidence must meet the reasonable doubt standard:

> The difference between direct evidence of guilt and circumstantial evidence of guilt lies in the number of steps the jury is required to take. When the evidence is direct evidence of guilt, the only step the jury is required to take is to determine the credibility of such direct evidence and decide whether such evidence is sufficient to establish guilt beyond a reasonable doubt. With circumstantial evidence, the jury is first required to determine the credibility of the evidence as to the circumstantial facts. But then, the jury is required to take an additional second step and decide whether the proved circumstantial facts reasonably and logically compel the conclusion that the defendant is guilty.

(Trial Tr. 877-79.) Petitioner contends that this language is confusing, but when considered with the rest of the charge on circumstantial evidence and in the context of the charge as a whole,

Trial Tr. 871-897, the court finds that this instruction is not erroneous,[4] let alone capable of "infecting the entire trial" so as to violate Petitioner's constitutional rights. Cupp, 414 U.S. at 147. Therefore, Petitioner's challenge to the trial court's charge on "reasonable doubt as to circumstantial evidence" is without merit.

On the trial court's instructions to the jury regarding the elements of Section 6512(1), Petitioner argues that the jury did not receive an accurate reading of the law as stated in the statue and as interpreted by the courts at the time. (Obj. Tab 1 at 14.) After reading the text of the statute verbatim, the court instructed the jury that:

> There are two parts to this law. The first part of the law says that a person who is not licensed to practice, in this case, medicine[,] violates the law when they practice that profession. The second part of the statute says that anyone who knows a person is not licensed but aids or abets them in practicing, in this case, medicine[,] is also guilty of violating this law.

(Trial Tr. 884.)

The trial judge then went through the specific elements of the statute that must be proven beyond a reasonable doubt in order to convict each defendant. (Trial Tr. 885-93.) The court agrees with Judge Gold's conclusion that Petitioner's claim is essentially a reiteration of his first claim regarding the application of Section 6512(1) to licensed professionals. (R&R 26.) Because Section 6512(1) has been held by the New York Court of Appeals to apply both to unlicensed and licensed persons, there was no error in the trial judge's charge on the application of the statute to Petitioner.

For the reasons discussed above, the court adopts Judge Gold's recommendation that this ground be denied.

---

[4] The court disagrees with Petitioner's bare assertion that the instructions on circumstantial evidence were "materially different" from New York pattern instructions. See Trial Tr. 876-879; CJI2d[NY] Circumstantial Evidence, available at http://www.nycourts.gov/cji/1-General/CJI2d.Circumstantial_Evidence.pdf. Even if the instructions were materially different from the pattern instructions, Petitioner would still have to show that they violated his constitutional rights. Cupp, 414 U.S. at 147.

### C. Petitioner's Claim that the Evidence at Trial Was Insufficient To Support a Guilty Verdict

Petitioner contends that there was insufficient evidence at trial to support a finding that Santi "practiced medicine." (Pet. Ground 2.) At trial, three patient-witnesses described how Santi started an IV line and how they felt once the line was inserted. Judge Gold summarized the witnesses' testimony and noted that "the only truly contested issue at trial was whether Santi administered anesthesia through the IV lines she ran for the three patients who testified for the prosecution." (R&R 21.) Judge Gold recommended that the claim be denied, because it essentially challenged the credibility and reliability of the prosecution witnesses' testimony, and "a district court cannot second-guess a jury's credibility determination upon review of a habeas determination." (R&R 21) (quoting Ayala v. Ercole, No. 06-cv-1747 (JFB), 2007 WL 1135560, at *8 (E.D.N.Y. Apr. 17, 2007) (citing cases).) In his Objections, Petitioner asserts that no rational juror would have relied on the recollection of witnesses who were "intoxicated by anesthetic medications," that the witnesses' testimony led to speculation, and that there was no evidence other than that of the witnesses that Santi engaged in the practice of medicine. (Obj. Tab 2 at 11.)

In reviewing a collateral challenge to a state conviction on the grounds that the verdict was not sufficiently supported by the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998) ("The ultimate question is not whether *we believe* the evidence adduced at trial but whether *any rational trier of fact could so find*."). A habeas petitioner "bears a very heavy burden" when he

seeks to establish that the state court's rejection of his legal insufficiency claim was contrary to or an unreasonable application of Jackson. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (quotation omitted).

After reviewing the trial transcript, the court agrees with Judge Gold's conclusion that based on the testimony of the three patient-witnesses, a rational trier of fact could have concluded that Santi administered anesthesia. (R&R 21; Trial Tr. 501-06, 530-31 (testimony of Trevor Locke); Id at 551-59 (testimony of Andrea Lopez); Id. 595-97, 606 (testimony of Mary Brosnan).) Petitioner's argument that no rational trier of fact would rely on the testimony of witnesses intoxicated by anesthesia is a challenge to the reliability and credibility of the prosecution witnesses' testimony. The credibility and reliability of witness testimony is a question of fact to be determined by the jury, Manson v. Brathwaite, 432 U.S. 98, 116 (1977), and thus the jury is "exclusively responsible for determining a witness'[s] credibility." United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993). Accordingly, the court adopts Judge Gold's recommendation that Petitioner's sufficiency claim be denied.

### D. Petitioner's Claim that the Trial Court's Response to a Jury Question Was Prejudicial

Petitioner claims that the trial court refused to answer the jurors' question submitted to the court during deliberations. (Pet. Ground 3.) Judge Gold recommended that this claim be denied because the court's subsequent reiteration of the relevant portion of the jury charge was responsive to the jury's question, and Petitioner failed to establish that the trial court's response or the decision of the New York Court of Appeals with respect to that claim was contrary to or an unreasonable application of federal law. (R&R 28.) In his Objections, Petitioner asserts that he was prejudiced by the trial court's refusal to answer the question. (Obj. Tab 3 at 4.)

At Petitioner's trial, it was undisputed that Santi started IV lines; the dispute was whether Santi administered anesthesia to the patient-witnesses. The trial court repeatedly instructed the jurors that to convict, they must first find beyond a reasonable doubt that Petitioner aided and abetted Santi in practicing medicine upon the three witnesses "through the administration of anesthesia." (Trial Tr. 878-79, 887-90, 892-93.) At the start of deliberations, the jurors sent a note asking whether Santi, under the circumstances, was permitted "to introduce an IV to a patient." (Id. at 906.) After hearing from both parties, the court told the jurors that "[t]he response is going to be somewhat different from what you may expect, and it will be to reread to you the elements of the charges against Dr. Santi and in that you will have to decide this question yourselves." (Id. at 919.) The court then reiterated the relevant portion of its instructions to the jury and reviewed the elements of the charged offenses. (Id. at 919-20.) Specifically, the court again advised the jury that the prosecution was required to prove beyond a reasonable doubt that Santi practiced medicine on the witnesses "through the administration of anesthesia." (Id. at 919.)

New York law provides that upon a request from the jury for further instruction or information, the court "must give such requested information or instruction as the court deems proper." N.Y. Crim. Proc. L. § 310.30 (McKinney 2002). The trial court must respond in a "meaningful way" to such inquiries. People v. Malloy, 55 N.Y.2d 296, 301 (1982). Malloy held that where the jury requested clarification on the meaning of "reasonable doubt" and the original instruction was adequate, it was not error to reread the original instruction. See id. In Petitioner's case, the Court of Appeals held that a reiteration of the original charge may suffice, under appropriate circumstances, as "meaningful supplemental instructions." Santi, 3 N.Y.3d at 248. The Court of Appeals noted that "while it might have been better to address the note more

12

directly, here rereading the original, proper instruction was sufficient to convey the appropriate message to reasonable jurors. The jury's note had not expressed confusion about the meaning of that instruction." Id. at 249.

Having reviewed the trial transcript, the court agrees with Judge Gold's conclusion that the portion of the charge reiterated by the trial judge was responsive to the inquiry and that a reasonable juror would have understood this instruction as requiring proof that Santi did more than "introduce an IV to a patient." (R&R 28.) Petitioner's claim that he was prejudiced because the trial court's failure to address the question directly "allowed" the jurors to rely on extraneous evidence and commit juror misconduct (Obj. Tab 3 at 11; Tab 4 at 2), is without merit. The Second Circuit has noted the "strong presumption that the jury in reaching its verdict complies with [the court's] instructions." Bingham v. Zolt, 66 F.3d 553, 563 (2d Cir. 1995). Petitioner's assertion that the jurors "rapidly" reached a unanimous guilty verdict shortly after returning to deliberations does not rebut this presumption. (Obj. Tab 4 at 2.)

Even if the trial court's response to the jury question were in error, it did not have a "substantial and injurious effect" on the verdict. Fry v. Pliler, 127 S. Ct. 2321 (2007); see also United States v. Joyner, 201 F.3d 61, 76 (2d Cir. 2000) (finding harmless error where trial court failed to address the jury's question regarding an instruction that was found erroneous on appeal). In relation to the jury charge as a whole, the court's response to the jury's question cannot be said to have "so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147.

The court therefore adopts Judge Gold's recommendation that this claim be denied.

### E. Petitioner's Juror Misconduct Claim

Petitioner claims that juror misconduct improperly resulted in conviction because a juror who worked in a hospital told the other jurors that it was unlawful for anyone other than a doctor or registered nurse to insert an IV. (Pet. Ground 4.) He also contends that at a hearing after trial, the court improperly excluded testimony about whether the jury considered information outside of the record during deliberations. (Id.) Judge Gold recommended rejecting both of these claims (R&R 33-34), and Petitioner has objected (Obj. Tab 4).

Petitioner claimed juror misconduct on direct appeal, and the Appellate Division directed the trial court to hold a hearing on the issue. People v. Corines, 743 N.Y.S.2d 314 (N.Y. App. Div. 2002). The hearing occurred two years after the trial, and all but one of the trial jurors testified. (Hr'g Tr. 6.) One juror (hereinafter "the nurse") testified that she was a nurse in pediatric neurosurgery, and that at her place of work, only registered nurses or doctors are permitted to insert IVs. (Id. at 38, 44-45.) She testified that while the other jurors knew she was a nurse, they did not look to her for special information or "rely" on her, and that she did not tell her fellow jurors that only doctors and nurses can insert IVs at her place of employment. (Id. at 47-50, 51.) She testified that it "wasn't [her] place" to answer questions about the medical field and that "I wasn't there to explain to them and tell them anything about the medical field, I was there as a juror like they were." (Id. at 162, 159.) She later testified, however, that when the group was discussing IVs, she contributed to the discussion and she thought that at some point the jurors asked her what she would do in connection with insertion of an IV. (Id. at 163-64.) She testified that she may have told them that only a licensed professional may administer an IV, "if we was on the conversation, they asked, I am sure I did because it's true you have to be licensed . . . ." (Id. at 167.)

Of the other ten jurors who testified, one testified that the nurse told her fellow jurors that a medical assistant may not start an IV, which "helped shape" the decision. (Id. at 59-60.) That juror testified that the nurse held herself out as someone who had specialized knowledge or experience, stating "I just get the impression that she knew what she was talking about" based on her "job and experience." (Id. at 60.) On further examination, however, that juror testified that he didn't recall the juror at issue specifically saying she was a nurse, and that she did not discuss her background, education, or training (id. at 63-64), nor did the other jurors ask her about her experience (id. at 60). Another juror had a vague recollection that the nurse provided some information about procedures, including IVs (id. at 108-09), but that she did not extend herself as an expert, and that all the jurors talked about their own experiences going to the doctor, "their own stories" (id. at 113-114).

The other eight jurors either could not recall whether a fellow juror was employed as a nurse or in the medical profession, or could not recall the nurse providing any information about IVs or medical procedures based upon her own experience or knowledge. (Id. at 29-30 ("believ[ing] vaguely" that one or two people "might have had some related job position" but that the jury did not rely on extraneous evidence); id. at 69 (recalling vaguely that there was "maybe one juror with health experience," but that person did not discuss her experience); id. at 79 (recalling that one juror was a nurse, but that the nurse did not say anything about what she did, and that everyone on the jury had "exposure" to medical procedures at some level); id. at 88 (failing to recall whether anyone had special training or talked about his or her experiences); id. at 100-01 (recalling that one or two jurors might have known something about hospitals but not remembering anyone saying anything about it); id. at 118-19 (recalling one juror was in the medical industry and stating that "I don't think she influenced the jury in any way like I don't

think she told any war stories."); id. at 127-28 (thinking someone was a nurse and not remembering anything else); id. at 135-136 (failing to remember whether any juror was in the medical profession).

After the hearing, the trial court concluded that there was no juror misconduct warranting reversal, and the Appellate Division and New York Court of Appeals affirmed. Corines, 764 N.Y.S.2d at 117, aff'd, 3 N.Y.3d at 249-250. The Court of Appeals, based on the record, concluded that the juror was not an "expert," that her experiences in the medical field were "limited," that "she did not conduct any experiment or investigation that was later used to influence the jury," and that "she merely gave her lay opinions regarding the introduction of an I.V. line, drawing on both her life experiences and the trial evidence. This was proper." 3 N.Y.3d at 249-250.

After reviewing the transcript, the court concludes that Petitioner has not shown that the New York courts' decisions were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition, Petitioner has not shown that the state courts' legal conclusions were contrary to or an unreasonably application of clearly established federal law. A federal court may overturn a state court conviction on the ground of juror misconduct only in egregious circumstances. Anderson v. Miller, 346 F.3d 315, 324 (2d Cir. 2003) (affirming denial of habeas relief where two jurors "might have experienced severe emotional distress within the jury room" and "subjectively felt pressured into rendering guilty verdicts.").

Not all information based on personal experience that a juror shares with her fellow jurors is prejudicial. It is well-established that "[j]urors do not leave their knowledge of the world behind when they enter a courtroom . . . ." Dawson v. Delaware, 503 U.S. 159, 171

(1992). When deliberating, jurors are permitted to rely on their "common knowledge from their life experience," as well as any "specific knowledge about a particular subject." United States v. Chin, 275 F. Supp. 2d 382, 384 (E.D.N.Y. 2003). In Bibbins v. Dalsheim, the Second Circuit recognized that a criminal defendant's Sixth Amendment rights are "implicated when the jury considers evidence that was not admitted at trial," and that "extra-record information that becomes known to the jury is 'presumptively prejudicial.'" 21 F.3d 13, 16 (2d Cir. 1994), cert. denied, 513 U.S. 901 (citation omitted). The court nonetheless found that not all outside or extraneous information on which a jury may rely is improper. Id. The court found that a juror's comments that she lived near the area of the drug sale at issue, and that the storefronts in that area were boarded up, did not constitute extraneous prejudicial information warranting habeas relief. Id. at 16-17. The court concluded that the juror's observation "concerning the life of this community is part of the fund of ordinary experience that jurors may bring to the jury room and may rely upon." Id. at 17; see also Chin, 275 F. Supp. 2d at 384-85 (holding that juror who informed fellow jurors about Chinese family values that might have explained victims' conduct was part of ordinary experience and did not constitute extraneous prejudicial material, rejecting defendant's argument that the information was "akin to expert statements"); Cocconi v. Pierre Hotel, 146 F. Supp. 2d 427, 432-433 (S.D.N.Y. 2001) (holding that a juror's occupation as a corporate travel consultant did not transform the information she shared with fellow jurors about the quality of the defendant hotel into specialized knowledge).

Even assuming that the nurse did share extra-record information with the jury, and presuming it to be prejudicial, Bibbins, 21 F.3d at 16, the presumption can be overcome by a showing that the information did not have a "substantial and injurious effect" on the verdict, Pliler, 127 S. Ct. at 2328 (holding that a court must assess the prejudicial impact of constitutional

error whether or not the state appellate court recognized the error and reviewed it). The test is an objective one: the court must assess "the likelihood that the influence would affect a typical juror." United States v. Greer, 285 F.3d 158, 173 (2d Cir. 2002) (citation omitted). As part of the objective test, however, the court "may appropriately consider the circumstances surrounding the introduction of [the] information in making [its] determination." Id. (citation omitted). Here, the information that the nurse allegedly shared has only limited relevance to the question that was before the jury. Whether Santi was permitted to start an IV was not the issue before the jury. The issue at trial, and as repeatedly stated in the jury instructions, was whether Santi practiced medicine by administering anesthesia, not merely by starting an IV line. The New York courts' conclusion that the nurse had provided "lay opinions . . . drawing on both her life experiences and the trial evidence," which was "proper," 3 N.Y.3d at 249, is therefore not an unreasonable application of clearly established federal law.

Petitioner's claim that the trial court erred when it limited the scope of questions put to the jurors regarding their deliberations is also without merit. While the Federal Rules of Evidence do not apply in state court proceedings, the trial court's limitations on counsel in the post-verdict hearing were not contrary to federal law. While Rule 606(b) of the Federal Rules of Evidence allows testimony on "whether extraneous prejudicial information was improperly brought to the jury's attention," it prohibits inquiry into "any matter or statement occurring during the course of the jury's deliberations" or any juror's "mental processes" in connection with reaching a verdict. Loliscio v. Goord, 263 F.3d 178, 189 n.6 (2d Cir. 2001). After reviewing the transcript and Judge Gold's recommendation *de novo*, the court agrees with Judge Gold's analysis of the trial court's questioning and his conclusion that the balance struck by the trial court at Petitioner's post-trial hearing was consistent with the provisions of Rule 606(b).

The court thus adopts Judge Gold's recommendation that this claim be denied.

### F. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner claims that he was deprived of meaningful representation in violation of his

Sixth Amendment right to counsel. (Pet. Ground 5.) Specifically, he argues that his attorney

was ineffective for failing to obtain an expert at trial. (Id.) On his motion for a stay to exhaust

state claims, Petitioner presented two additional claims of ineffective assistance of counsel.

(Docket Entry #32). He contends that he was deprived of the effective assistance of counsel

when his attorney failed to object to the court's jury charge on N.Y. Education Law § 6512(1) or

to the circumstantial evidence charge. (Id.) He also contends that defense counsel did not

adequately cross-examine the prospective jurors on voir dire. (Id.) Although Judge Gold denied

Petitioner's Motion for a Stay, he recommended that the court interpret Petitioner's Motion to

Stay as a Motion for Leave to Amend and allow the amendment. (R&R 9 n.7). Although the

ineffective assistance of counsel claims were not exhausted in state court, Judge Gold

recommended that they be denied on the merits (R&R 10), finding that they were "plainly

meritless."[5] Rhines v. Weber, 544 U.S. 269, 277 (2005). Petitioner objects to the portions of the

R&R concerning his attorney's failure to obtain expert witnesses and to object to the jury

charge.[6] (Obj. Tab 5 at 1.)

To prevail on an ineffective assistance of counsel claim, Petitioner must establish both

that 1) counsel was deficient; and 2) that Petitioner suffered prejudice as a result of the

deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). Representation is ineffective if

"counsel's representation fell below an objective standard of reasonableness." Id. at 688. To

---

[5] Petitioner twice sought stays from Judge Gold. (See Docket Entry #30 at 13-16 (denying first motion to stay at a conference); Docket Entry #42 (denying second Motion to Stay).)

[6] The court has reviewed for clear error the portion of the R&R concerning Petitioner's claim that defense counsel failed to properly interrogate jurors during voir dire, Urena, 160 F. Supp. 2d at 609-610, and finds it thorough, well-reasoned, and well-founded in applicable law.

show prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201-02 (2d Cir. 2000) (internal quotation marks and citation omitted). This general rule applies to an attorney's strategic decision about whether to consult or call an expert witness. See, e.g., United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) (finding that defense counsel's failure, for tactical reasons, to designate particular witness as an expert was not ineffective assistance). This rule is consistent with Strickland's admonition that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. A failure to present expert testimony might be ineffective assistance when "the jury is likely to be incapable of evaluating essential facts" without it, but where an expert "would only marginally assist the jury in its role as fact finder, an attorney's decision not to call an expert is more likely to fall within the bounds of reasonable performance and less likely to prejudice the defendant." Massaro v. United States, 2004 WL 2251679, at *4 (S.D.N.Y. Oct. 5, 2004).

Petitioner asserts that his attorney should have obtained expert testimony for preparation or for testimony at trial to show that 1) an individual's ability to perceive and recall is compromised by the effects of anesthesia, 2) injecting medications into an IV line under the direction of a licensed physician is not the unauthorized practice of medicine, and 3) a sensation of "burning in the arm" does not establish that medication was administered. (Pet. Ground 5). At the outset, Petitioner's claim that an expert should have been called to testify about what

constitutes the unauthorized practice of medicine is plainly without merit, because that issue is a question of law, not expert opinion.

As for the lack of expert testimony on the effects of anesthesia, the court concludes that any such testimony would have been of only marginal assistance to the jury. See Massaro, 2004 WL 2251679 at *4. The court agrees with Judge Gold's conclusion that the extent to which anesthesia impairs an individual's ability to perceive and remember is only marginally relevant here, because the critical testimony offered by the three patient-witnesses in large part concerned events they perceived before, and to a limited extent immediately after, the anesthesia was administered. (R&R 37.) On the issue of whether anesthesia provides a "burning sensation," as discussed below, Petitioner's testimony at trial did not suggest that Santi (or anyone else) started a glucose-saline IV, nor did Petitioner testify that the burning sensation experienced by Mr. Locke was caused by the administration of a glucose-saline solution rather than anesthesia. (See Trial Tr. 767-795).

In addition, the evidence does not show that the jury was "incapable of evaluating essential facts" without expert testimony. See Massaro, 2004 WL 2251679 at *4. The New York Court of Appeals found that expert testimony on the effects of anesthesia was not required in this case. Santi, 3 N.Y. 3d at 246-47. While Petitioner did not raise the argument of ineffective assistance of counsel in his state-court appeals, he attacked the sufficiency of the prosecution's evidence in part on the basis of the prosecution's failure to provide expert testimony on the effects of anesthesia. Id. The New York Court of Appeals rejected Petitioner's claim that expert testimony was required, because "[t]he administration of anesthesia, a commonly employed means of relieving pain during surgical procedures, is not a matter so

foreign or esoteric as to require an expert explanation." Id. at 247. The Court of Appeals concluded that

> Jurors, equipped with their everyday knowledge and experience, could reasonably have concluded that the sensations and experiences described by each of the patient-witnesses were caused by the administration of anesthesia. Under the circumstances of this case, on this record, it is clear that the jury did not need expert assistance in determining whether Santi administered anesthesia to each of the complaining patients.

Id.

Moreover, the record at trial supports the conclusion that the failure of Petitioner's counsel to call an expert on the effects of anesthesia was strategic. While counsel presented two witnesses with training and expertise on anesthesia – Petitioner and Dr. Chalasani, a surgeon with twenty-five years of experience – counsel did not elicit any testimony on the effects of anesthesia on memory and perception or any burning sensation, topics on which either witness could have presumably testified. (Trial Tr. 767-795 (Petitioner's testimony); id. at 743, 745, 748-49, 751 (Chalasani's testimony on the administration of anesthesia).) In closing, Petitioner's counsel criticized the prosecution for failing to provide any testimony about the sensations that a patient would feel upon the administration of an anesthetic. (Id. at 835-36 ("Did they bring in an expert that that [burning] sensation was medication or could have been medication or might have been medication? . . . Did they bother to prove to you one way or the other what that sensation was? . . . We don't have to prove that that sensation was anything. . . The prosecution . . . didn't call any competent medical expert. . . . they can't call one doctor in the State of New York to say sensation equals medication? Give us a break here."); see also id. at 809, 811, 827 (describing lack of prosecution testimony on effects of anesthesia and stating "we have no testimony as to what precisely those effects [of anesthesia] might have been.").) This argument undermines Petitioner's claim that his own counsel was constitutionally ineffective for failing to call medical

experts, because they suggest a tactical decision not to do so in order to attack the sufficiency of the prosecution's evidence.

Therefore, Petitioner has not overcome the strong presumption of reasonableness that must be accorded to counsel's strategic decision regarding which witnesses to call at trial, failing to meet the first prong of Strickland. Massaro, 2004 WL 2251679 at *4. Strickland makes clear that an attorney's performance is deficient if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Courts must be highly deferential in pursuing this inquiry, making every effort "to eliminate the distorting effects of hindsight" and operating with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Given this standard, Petitioner has not shown that his trial attorney's failure to consult or call an expert constituted deficient performance.

The court notes that Petitioner has submitted additional evidence in response to Judge Gold's R&R. Judge Gold noted that Petitioner "fails to support his petition with an expert affidavit or any other indication that the assertions he makes are accurate or could have been established with testimony obtained from a responsible expert witness." (R&R 37.) Petitioner submitted a notarized letter dated September 15, 2008 from a forensic doctor in support of his contentions regarding the effects of anesthesia on perception and memory and whether it provides a "burning sensation." (Obj. Ex. 1.) Under Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), a district court has discretion to consider additional evidence in its *de novo* review of a report and recommendation. Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998) (noting that while "[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, a district court

nonetheless retains discretion to review supplementation of the record."). It is well within the

court's discretion, however, to deny a request to present additional evidence where a party

"offered no justification for not offering the testimony . . . before the magistrate." Pan Am.

World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 n.3 (2d Cir. 1990); see also

Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) ("[a]bsent a most

compelling reason, the submission of new evidence in conjunction with objections to the Report

and Recommendation should not be permitted." ). Here, while it is clear that Petitioner obtained

the letter in response to the R&R, he has provided no reason why he did not obtain a purported

expert opinion earlier in support of his ineffective assistance of counsel claim. The court

therefore declines to consider Petitioner's purported expert letter.[7]

Petitioner's remaining claim of ineffectiveness is based on the trial counsel's failure to

object to the court's jury charge with respect to New York Education Law § 6512(1) and

circumstantial evidence. For the reasons discussed above, this argument fails because there were

no errors in either instruction meriting an objection.

The court therefore adopts Judge Gold's recommendation that the claims of ineffective

assistance of counsel be denied.

## III.    CONCLUSION

For the reasons stated above, after conducting a *de novo* review of those portions of the

R&R to which Petitioner has objected, the R&R is adopted in its entirety.  The Petition is

---

[7] The court also declines to consider this letter in light of the court's conclusions that 1) expert testimony is of only "marginal relevance" to the questions put before the jury at Petitioner's trial, and 2) Petitioner has failed to show deficient performance of counsel under the first prong of Strickland. Moreover, if the court were to consider this new testimony, doing so would likely require an evidentiary hearing on Petitioner's ineffective assistance of counsel claim, which is unexhausted. See 28 U.S.C. § 2254(2)(2) (barring evidentiary hearing when habeas petitioner has "failed to develop the factual basis of a claim in State court proceedings" unless petitioner has shown that the claim relies on a new, retroactive rule of constitutional law, a factual predicate that could not have been previously discovered through due diligence, or that the facts would establish by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). Petitioner's claim clearly does not meet this standard.

therefore dismissed and Petitioner's Motion for Summary Judgment is denied. As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. Pursuant to 28 U.S.C. § 1915(a), in forma pauperis status is denied for the purposes of any appeal. The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      November 4, 2008

NICHOLAS G. GARAUFIS
United States District Judge